IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MIGUEL MORALES FIGUEROA**,

Plaintiff,

v.

**RUBEN VALDES**, **D.C.**, **et al.**,

Defendants.

Civil No. 15-1365 (DRD)

**OPINION AND ORDER**

Plaintiff Miguel Morales-Figueroa filed the instant personal injury lawsuit against Defendants Ruben Valdes, D.C., Alicia M. Santos, the conjugal partnership constituted between them, and NCMIC Insurance Company under diversity jurisdiction, 28 U.S.C. § 1332. Pending before the Court are Defendants' *Motion to Dismiss* (Docket No. 13), Plaintiff's *Response in Opposition to Motion to Dismiss* (Docket No. 14), Defendants' *Reply Plaintiff's Response in Opposition to Motion to Dismiss* (Docket No. 19), and Plaintiff's *Sur-reply to Defendants' Reply* (Docket No. 24). For the reasons provided below, the Court hereby **DENIES** Defendants' *Motion to Dismiss*.

    **I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Miguel Morales-Figueroa ("Plaintiff") alleges that, on or about September 18, 2013, Plaintiff visited Ruben Valdes, D.C.'s office seeking treatment for back pain. Valdes, a

1

chiropractor, evaluated Plaintiff on September 24, 2013 and ordered Plaintiff to receive exercise therapy, followed by icing. Plaintiff claims he instructed Valdes to not perform any spinal manipulations on him.

On September 25, 2013, Plaintiff again was ordered to receive exercise therapy and to ice the affected area. However, on this day, Plaintiff also had his spine manipulated by Valdes. Plaintiff alleges that having his spine manipulated severely aggravated his preexisting back pain to an unbearable degree.

On October 1, 2013, Plaintiff was evaluated by a neurosurgeon who diagnosed him with "severe left L5/S1 radiculopathy with associated weakness and very severe worsening since Valdes' chiropractic manipulation on September 25, 2013." Docket No. 1 at 4. Plaintiff alleges he has also experienced bowel and bladder dysfunction, intolerable pain, and inability to sleep for three days following his September 25 visit to Valdes' office.

On April 8, 2015, Plaintiff Miguel Morales-Figueroa filed suit against Defendants Ruben Valdes, D.C. ("Valdes"), Alicia M. Santos ("Santos")[1], the conjugal partnership constituted between Valdes and Santos, and NCMIC Insurance Company ("NCMIC") ("Defendants"). *See* Docket No. 1. Plaintiff avers that Valdes' chiropractic spine manipulation aggravated his pre-existing back condition, caused him

---

[1] Plaintiff did not include Defendant Santos in his initial complaint. Instead, Plaintiff amended his initial complaint with leave of the Court to include her as a named defendant. *See* Docket No. 29.

severe mental and physical pain, and has impaired his ability to conduct his own business.

On June 3, 2015, Defendants Santos, the Valdes-Santos conjugal partnership, and NCMIC filed a *Motion to Dismiss* (Docket No. 13, restated at Docket No. 31) alleging that the claims against them were time-barred. The movants argue that Plaintiff successfully tolled the one-year statute of limitations against Valdes by sending him an extra-judicial claim letter on July 14, 2014. However, because Plaintiff did not include any of the moving parties in the letter, the limitations period against the movants was never tolled.

On June 10, 2015, Plaintiff filed a *Response in Opposition to Motion to Dismiss* (Docket No. 14). Therein, Plaintiff averred that, pursuant to landmark Puerto Rico Supreme Court decision *Fraguada Bonilla v. Hosp. Auxilio Mutuo*, 186 D.P.R. 365 (2012), the claims against the movants were not time-barred because the statute of limitations was tolled against Valdes and he is in perfect solidary liability with the movants.

On June 29, 2015, Defendants Santos, the conjugal partnership, and NCMIC filed their reply to Plaintiff's opposition (Docket No. 19). Defendants re-stated their arguments for dismissal and emphasized that Santos, Valdes, and the conjugal partnership between them are distinctly separate legal entities, and the statute of limitations had to be tolled with respect to each one of

3

them. Furthermore, Defendants emphasized that Plaintiff was also under the obligation to separately toll the statute of limitations for NCMIC, Valdes' insurance carrier.

## II.  STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'")(quoting *Twombly*, 550 U.S. at 555) (citation omitted).  Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a).  *Id.* at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. "Context based" means that a Plaintiff must

4

allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a

5

plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly*, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. 679); *see Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that

6

actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. *Ocasio-Hernandez*,

7

640 F.3d at 12 (citing *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009)).

The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III. ANALYSIS

#### *Statute of Limitations for Claims under 1802*

The determinative issue in the Court's analysis is whether Plaintiff properly tolled the statute of limitations against Defendants Santos, the Valdes-Santos conjugal partnership, and/or NCMIC. For diversity tort actions such as the instant case, the statute of limitations is substantive law and Puerto Rico law controls. *See Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822

(1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464 (1945); *Daigle v. Maine Medical Center*, 14 F.3d 684, 689 (1st Cir. 1994).  Puerto Rico's Civil Code provides that personal injury actions carry a one year statute of limitations from the moment the aggrieved person has knowledge of the injury.  31 P.R. LAWS §5298; *Rodriguez v. Suzuki Motor Corp.*, 570 F.3d 402, 406 (1st Cir.2009) ("the statute of limitations starts to run once the injured party knows both that he has suffered a harm and who is responsible for it.").  Although the general rule establishes that the one-year term starts on the date the plaintiff becomes aware of the damage and who caused the damage, if the plaintiff's lack of awareness is due to his own negligence or carelessness, the statute of limitations will begin on the date the alleged tort occurred.  The plaintiff is then presumed to have knowledge of the injury at the time of the tortious act.[2] *Montañez v. Hospital Metropolitano*, 157 D.P.R. 96 (2002). Based on the pleadings, there appears to be no dispute that the statute of limitations commenced on the day Defendant Valdes manipulated Plaintiff's spine, September 25, 2013.  From that date, Plaintiff had one year to file suit or otherwise toll the statute of limitations against Defendants.  *See De Leon v. Caparra Center*, 147 D.P.R. 797 (1999) (In claims under Art. 1802, after interrupting the statute of limitations period, Plaintiffs have one year to file suit).

---

[2] The plaintiff has the burden of proving that he learned of the act at a later date. *Id.*

Plaintiff argues that, although the statute of limitations commenced on September 25, 2013, he sent Valdes a demand letter on July 14, 2014, which interrupted the limitations period. *See* Docket No. 75. Article 1873 of the Civil Code provides three ways by which the statute of limitations may be tolled. *Tokyo Marine and Fire Ins. Co. v. Perez & CIA de Puerto Rico, Inc.*, 142 F.3d 1, 4 (1st Cir. 1998). This may be accomplished (1) "by the institution of an action before the courts [;]" (2) "by extrajudicial claim of the creditor [;] and" (3) "by any act of acknowledgment of the debt by the debtor." *Id*. (quoting Civil Code of Puerto Rico, 31 P.R. LAWS §5303)(internal quotation omitted); *see also Diaz de Diana v. A.J.A.S. Ins. Co.,* 110 D.P.R. 471 (1980)(enumerating the elements of a proper extra-judicial claim letter). The letter sent on July 24, 2014 constituted an extrajudicial claim of the creditor, and Defendants admit that Plaintiff adequately tolled the statute of limitations with respect to Defendant Valdes. However, the movants argue that, under Puerto Rico law, an extrajudicial claim letter addressed to only one defendant can only toll the statute of limitations against joint and severally liable defendants in perfect solidarity with the named defendant. *See Fraguada Bonilla v. Hospital Auxilio Mutuo*, 186 D.P.R. 365 (2012); *also see* Docket No. 13. More specifically, Defendants Santos, the conjugal partnership, and NCMIC claim they are not in perfect solidarity with Defendant Valdes. *Id*. On the other hand, Plaintiff counters

that the movants are perfectly solidary with Defendant Valdes due to the nature of the pre-existing relationships between each separate moving party and Defendant Valdes.

Before the *Fraguada* decision, *Arroyo v. Hospital la Concepcion*, 130 D.P.R. 596 (1992) was the controlling precedent on tolling with respect to joint and severally liable defendants. In *Arroyo*, the Puerto Rico Supreme court held that the unitary solidarity doctrine "allows for timely inclusion of a solidary tortfeasor not originally included in the action." *Id*. Therefore, in order to toll the statute of limitations as to any one potential defendant, a plaintiff need only have alleged in an amended complaint that the new defendant was "solidarily liable for the damages claimed against the original defendant in the complaint [that was] filed within the period of limitations prescribed by law." *Id*. In 2008, the Supreme Court of Puerto Rico expanded their holding in *Arroyo*, allowing plaintiffs to add a joint and severally liable defendant otherwise barred by the statute of limitations even though the "plaintiff knew beforehand the identity and elements necessary to exercise his cause of action against [that defendant]." *Commonwealth of P.R. v. Shell Oil Co. (In re Methyl Tertiary Butyl Ether "MTBE" Prods. Liab. Litig.),* 959 F.Supp.2d 476, 491 (S.D.N.Y.2013) (citing *Garcia Perez v. Corp. Serv. Mujer,* 174 D.P.R. 138, 155 (2008)).

11

The landmark *Fraguada* decision partly overruled *Arroyo* by holding that "the secondary effects of the traditional solidarity—among them, the interruption of the prescriptive term—do not govern." *Fraguada*, 186 D.P.R. at 381 (2012). *Fraguada* further held that "in actions for damages [involving imperfect solidarity], the injured party must individually interrupt the prescriptive term with regard to each joint and several co-causer," *id.,* and "timely filing of a complaint against a supposed co-tortfeasor does not toll the statute of limitations against the rest of the alleged co-tortfeasors." *Id.* at 377.

Plaintiff argues that there exists perfect solidarity between all Defendants in the instant case. *See Fraguada* at 381 ("Perfect solidarity" can be contracted for or can arise from pre-existing relationship ties between tortfeasors). On the other hand, Defendants contend that the relationships between Defendant Valdes and the moving parties are imperfect, and Plaintiff incorrectly relied on the demand letter sent to Defendant Valdes to toll the limitations period against the remaining defendants.

### *Tort Solidarity of a Conjugal Partnership under Puerto Rico Law*

If the spousal relationship is characterized by perfect solidarity, the suit against Defendant Santos and the Valdes-Santos conjugal partnership is not time-barred. However, an obligation cannot be considered *in solidum* unless the intention to be

solitarily liable clearly arises from the instrument. *See Rosario v. Sandoval*, 60 P.R.R. 401, 403 (1942). Joint obligations are not to be presumed unless there is an express agreement to that effect. 31 P.R. LAWS §3101.

A conjugal partnership in Puerto Rico, pursuant to Articles 1295 to Article 1326 of the Puerto Rico Civil Code, is a concept which arises from a legally valid marriage wherein a married couple share in the "earnings or profits indiscriminately obtained by either of the spouses during the marriage . . . share and share alike," 31 P.R. LAWS §3621. Both members of a conjugal partnership are owners in equal parts to all goods obtained during the marriage. *Montalván v. Rodríguez*, 161 D.P.R. 411, 420 (2004).

Despite being characterized by joint property ownership, a conjugal partnership constitutes a separate legal entity from its two spousal members. *See Int'l Charter Mortgage Corp.,* 110 D.P.R. 862 (1981). Therefore, for a court to have jurisdiction over both spouses and the conjugal partnership when all three have been named in a suit, it is necessary to serve process on each party separately. *Vega v. Bonilla*, 153 D.P.R. 588 (2001). A party may not recover from a spouse or from the conjugal partnership unless they have been named in the suit and served with process. *Nieves Diaz v. Gonzalez Massas*, 178 D.P.R. 820, 860 (2010).[3]

---

[3] For a court to have jurisdiction over both spouses and the conjugal partnership when all three have been named in a suit, it is necessary to serve process on each party separately. *Vega v. Bonilla*, 153 D.P.R. 588

Notwithstanding that the conjugal partnership is legally separate from its members, all debts and obligations incurred during the marriage are chargeable to the conjugal partnership. 31 P.R. LAWS §3661. However, an obligation entered into for the sole benefit of one spouse or entered into for purposes of causing injury or defrauding the other spouse may not be charged to the conjugal partnership. *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. 70, 74 (1982); *see also WRC Properties, Inc. V. Santana*, 116 D.P.R. 127 (1985).

"The presumption of community property is not synonymous with joint liability." *Pauneto v. Nuñez*, 115 D.P.R. 591, 597 (1984). A conjugal partnership, or a spouse's, liability for torts performed by the other spouse may be both personal or may be charged to the conjugal partnership. A court faced with this question must make a determination based on the facts of the case. However, the Puerto Rico Supreme Court has generally held that, when a spouse's acts benefit the conjugal partnership's property interests, the partnership's property shall also be liable for the spouse's actions. *See Garcia v. Montero Saldana*, 107 D.P.R. 319 (1978). "He who expects profits, shall also expect losses." *SLG v. Pauneto Rivera*, 130 D.P.R. 749, 757 (1992)(internal citations omitted).

---

(2001). Defendant Santos and the Valdes-Santos partnership first appeared in the instant suit on August 4, 2015, when Plaintiff filed his Amended Complaint (Docket No. 29). Both parties agreed to voluntarily appear without being served. *See* Docket No. 25 at 1.

In their *Motion to Dismiss*, Defendants allege Plaintiff's complaint contains no allegation that the conjugal partnership or Defendant Santos benefitted in any way from Defendant Valdes' work as a chiropractor. Docket No. 31 at 4. However, the First Circuit, interpreting Puerto Rico Law, has held that "if a [spouse's] work is profitable for the [conjugal partnership], the liability will also fall on said [partnership's] property." *CMI Capital Mkt. Inv., LLC v. Gonzalez-Toro*, 520 F.3d 58, 63-64 (1st Cir. 2008)(citing *Lugo-Montalvo v. Gonzalez-Mañon,* 104 D.P.R. 372 (1975)(holding a conjugal partnership was liable for husband's alleged medical malpractice).

At this stage in the proceedings it is unclear whether or not Defendant Valdes' chiropractic practice is profitable. Furthermore, there is no evidence that the Santos-Valdes marriage is governed by the principles of a conjugal legal partnership. However, there is an allegation of spousal solidarity which is sufficient at law, as the Court must accept as true the allegations of a complaint. *Iqbal*, 556 U.S. 663-664. Further, there is jurisprudence pursuant to which the pleadings create a rebuttable presumption of spousal tort solidarity when one of the spouses runs a business for the benefit of the conjugal partnership. *Gonzalez-Toro*. Therefore, at this stage, the Court finds that the pleadings are sufficient to support the allegation that the conjugal partnership and Defendant Santos have benefitted from Defendant Valdes' chiropractic practice

15

and may be, therefore, perfectly solidarily liable to Plaintiff in this case. Accordingly, Defendants Santos and the Santos-Valdes conjugal partnership's *Motion to Dismiss* (Docket No. 31) is hereby **DENIED**.

### *Tort Solidarity of an Insurer with its Insured under Puerto Rico Law*

The one-year statute of limitations governing tort actions in Puerto Rico also applies to direct actions against insurers. *Fraticelli v. St. Paul Fire & Marine Insurance Co.*, 375 F.2d 186 (1st Cir. 1967); *see also Ramos v. Cont'l Ins. Co.*, 493 F.2d 329, 331-32 (1st Cir. 1974). Therefore, Plaintiff was under the same obligation to bring suit against Defendant NCMIC within one-year from the date Valdes performed a spinal manipulation on Plaintiff, September 25, 2013. From that date, Plaintiff had one year to file suit or otherwise toll the statute of limitations against Defendant NCMIC. *See De Leon v. Caparra Center*, 147 D.P.R. 797 (1999). Because Plaintiff did not name NCMIC in his demand letter sent on July 14, 2014, only a finding of perfect solidarity between Defendants NCMIC and Valdes would defeat Defendant NCMIC's *Motion to Dismiss*.

Under the Puerto Rico Civil Code, "[a]ny individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy." 26 P.R. LAWS §2003. Because the insurer-insured relationship is

16

born of a contract, the characteristics of the relationship are governed by the terms of the agreement. *Gen. Accid. Ins. Co. P.R. v. Ramos*, 148 D.P.R. 523 (1999).

An insurer's tort solidarity may not be presumed. Instead, tort solidarity should clearly arise from the insurance contract and the insurer's tort liability will always be limited to what is established in the terms of the agreement. *Id.*; *see Ruiz Rodriguez v. Litton Indus. Leasing Corp.*, 574 F.2d 44 (1978) (holding that statutory liability of insurer cannot exceed extent of contractual undertakings with insured, pursuant to Puerto Rican direct action statute); see also *Clinica Dr. Perea v. Hernandez*, 85 P.R.R. 738 (1962). However, if an insurer fails to plead the limits of its liability coverage over its insured, the insurer's liability will be "coexistive with the sum claimed in [Plaintiff's] petition." *U.S. Fidelity & Guaranty Co. v. Superior Court*, 85 P.R.R. 124 (1962).

Defendants have provided no evidence that NCMIC and Valdes' insurance contract does not include a solidarity clause. Plaintiff, on the other hand, would have the Court follow *Tokyo Marine and Fire Ins. Co. Ltd. v. Perez & Cia, De Puerto Rico, Inc.,* 142 F.3d 1 (1st Cir.1998) where the First Circuit established, interpreting Puerto Rico law, that insured defendants in tort actions are solidarity liable with its insurer. However, in order to make a solidarity determination with certainty, the Court must necessarily

have evidence shedding light on the terms of the insurance contract. At this stage, Plaintiff has pled sufficient facts in his complaint for the Court to determine that it is plausible that Defendants NCMIC and Valdes may be solidarily liable. Accordingly, Defendant NCMIC's *Motion to Dismiss* (Docket No. 31) is hereby **DENIED**.

## V. CONCLUSION

Plaintiff has pled sufficient facts for the Court to determine that the movants' relationships with Defendant Valdes are of perfect solidarity. Therefore, and for the reasons elucidated above, the Court hereby **DENIES without prejudice** Defendants' *Motion to Dismiss* (Docket No. 31). If, after discovery, Defendants produce evidence regarding the terms of the insurance contract and/or the characteristics of the conjugal partnership's financial arrangements, Defendants may restate their grounds for dismissal at the summary judgment stage. Accordingly, Defendants are hereby ordered to file an answer to the complaint within twenty (20) days.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of March, 2016.

S/ DANIEL R. DOMÍNGUEZ

DANIEL R. DOMÍNGUEZ
U.S. District Judge